# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE
Assigned on Briefs July 27, 2011

## STATE OF TENNESSEE v. SUSAN A. WEBB

**Interlocutory Appeal from the Criminal Court for Bradley County**
**No. M-08-352     Amy Armstrong Reedy, Judge**

---

**No. E2009-02507-CCA-R9-CD - Filed November 7, 2011**

---

In this interlocutory appeal, the Defendant-Appellant, Susan A. Webb, appeals the Bradley County Criminal Court's order denying her request for relief from the prosecutor's denial of her application for pretrial diversion. On appeal, Webb argues: (1) the trial court erred in allowing the victim to testify at the hearing challenging the prosecutor's denial of pretrial diversion; (2) the trial court erred in allowing the prosecutor to "fill in the gaps" in proof after determining that the prosecutor initially abused her discretion in denying pretrial diversion; (3) the trial court erred in suggesting and allowing her to file a second application for pretrial diversion; (4) the unfavorable factors regarding the circumstances of the case and the need for deterrence did not outweigh the favorable factors as stated in her application for pretrial diversion; (5) the prosecutor considered irrelevant factors and drew "conclusions based on conjecture and speculation" in evaluating her petition for pretrial diversion; (6) the prosecutor abused her discretion in using "conclusionary, flawed logic" in denying her application for pretrial diversion, which resulted in an "arbitrary and capricious" decision; and (7) appellate review of the denial of her two applications for pretrial diversion is improper. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Jerry Hoffer, Cleveland, Tennessee, for the Defendant-Appellant, Susan A. Webb.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Brooklynn Martin, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Background.** Webb was indicted for reckless aggravated assault, a Class D felony; initiating a false police report, a Class D felony; and failing to stop at the scene of an accident involving bodily injury, a Class A misdemeanor. Following her indictment, Webb filed an application for pretrial diversion on November 12, 2008, which was denied by the assistant district attorney general on November 21, 2008. On February 3, 2009, Webb filed a petition for writ of certiorari, claiming that the prosecutor abused her discretion in denying her request for pretrial diversion. On February 13, 2009, the trial court conducted a hearing on the petition for writ of certiorari, wherein the State called M.L.,[1] the fifteen-year-old victim, to testify. Defense counsel objected on the basis that there was no disputed fact raised in the assistant district attorney general's denial and that Webb was not disputing the fact that she injured the victim. The prosecutor responded that the victim's testimony would explain Webb's "sustained intent to violate the law." Defense counsel acknowledged that he would not characterize Webb's actions as a sustained intent to violate the law. Ultimately, the trial court determined that it would allow the victim to testify on a very limited basis regarding Webb's sustained intent to violate the law, although the court did not believe that the victim was capable of testifying about Webb's intent. M.L. subsequently testified that he was walking down Twentieth Street with his brother and his brother's girlfriend when he was hit by Webb's Jeep. He said that Webb did not stop her vehicle after the accident. M.L. concluded his testimony by stating that he gave a description of Webb's vehicle to the officers when they arrived on the scene and that the officers later located Webb's car. After this testimony, the State entered the following documents as exhibits: Webb's application for pretrial diversion, the blood alcohol report showing that Webb had a blood alcohol content of .18% approximately three hours after the accident, the DNA report showing that the blood on Webb's car matched the sample of M.L.'s blood, and the State's first response to Webb's application for pretrial diversion. At the conclusion of the hearing, the trial court granted Webb's petition for certiorari, finding that the prosecutor had abused her discretion in failing to weigh and consider all relevant factors regarding pretrial diversion, and remanded the matter to the prosecutor for further consideration of Webb's application. The record shows that the assistant district attorney general's first response to Webb's application for pretrial diversion only discussed the following factors: the circumstances of the offense; her criminal record; her social history and present condition, including mental and physical condition; the likelihood that pretrial diversion would serve the ends of justice and both interests of the public and the defendant; and the attitude of law enforcement.

On February 17, 2009, the assistant district attorney general filed an amended response again denying Webb's application for pretrial diversion. At the hearing on February

---

[1]It is this court's policy to identify juvenile victim's by their initials only.

23, 2009,[2] the trial court upheld the prosecutor's denial of pretrial diversion. However, the trial court indicated that Webb could file a second application for pretrial diversion. Webb subsequently filed a second application for pretrial diversion on June 5, 2009.

On June 8, 2009, the State filed its third response denying pretrial diversion. In the third response, the State again summarized the underlying facts in this case:

[Webb], a 49 year-old, well-educated woman, was driving on 20th Street in Cleveland (Bradley County, TN) on July 21st [sic], 2007 around 2:30 PM when she veered off the road and struck a 15 year[-]old boy who was walking along the side of the road with his two friends. The impact was so severe that the victim[']s elbow went through the windshield and his body knocked off her side view mirror and damaged her bumper from the collision. Witnesses described the victim's shoes and hat being thrown into the air from the force of the impact. However, [Webb] made the choice not to stop and kept driving. The victim was airlifted to Erlanger Hospital with severe injuries with his medical bills exceeding $250,000. Because [Webb] did not stop after she hit the victim, it is doubtful that law enforcement would have ever linked her to the crime if [she] hadn't called 911 about three hours later after the accident and reported the damage [to] her vehicle as a vandalism. When law enforcement made contact with [Webb] and matched the pieces of [Webb's] vehicle left at the scene of the hit and run with the damage to her vehicle, [Webb] confessed that she thought she "hit a mailbox or something and had failed to stop." Subsequent DNA tests showed that the blood on [Webb's] smashed windshield matched the victim's DNA. In addition, [Webb] had a blood alcohol content of 0.18 at the time she tried to call in the false report of vandalism on her car. The State is placing considerable weight on the circumstances of the offense. Ms. Webb severely injured another human being and then [three] hours later, tried to cover it up with a false police report by attempting to commit insurance fraud. It is the State's position that the circumstances of the offense over a [three-]hour period demonstrate a sustained intent to violate the law.

The assistant district attorney general gave "some weight" to Webb's criminal record. She noted that Webb admitted to entering a nolo contendere plea to a charge of driving under the influence in 1987 in Georgia. Although the prosecutor was unable to determine whether

<hr>

[2]A transcript from the February 23, 2009 hearing was not included in the record. However, in the motion for an interlocutory appeal, Webb detailed the fact that the trial court upheld the State's denial of her application for pretrial diversion and then suggested that she file a second application for pretrial diversion at the February 23, 2009 hearing.

Webb served any jail time for this plea or attended any counseling for this offense, she gave "some weight" to this conviction "because it ha[d] facts that [were] substantially similar to the facts of the case at issue in this denial of [p]retrial [d]iversion." The assistant district attorney general acknowledged that the conviction occurred more than twenty years ago; however, she stated that she was "very concerned that [Webb] was intoxicated yet again behind the wheel of a car on July 21st [sic], 2007."

Regarding Webb's social history and present condition, the prosecutor placed "great weight" on Webb's admission that she had a continuing alcohol abuse problem. She opined that although Webb had received treatment for her alcohol abuse for the first time in 1991, Webb "clearly had fallen back into the pattern of abuse on or about July 21st [sic], 2007." The assistant district attorney general acknowledged that Webb had obtained treatment following the incident on July 21, 2007, and she commended her for seeking treatment. She also acknowledged that she had considered the numerous letters forwarded from Webb's fellow Alcoholics Anonymous members, friends, and family regarding her character and her sobriety since the accident. However, the prosecutor still gave "great weight" to Webb's admission that she had a continuing alcohol abuse problem spanning several years. She also opined that Webb was "not a candidate for the extraordinary relief sought in this case."

The prosecutor also gave "great weight" to the deterrent effect of punishment on Webb and the community at large. She stated that this factor deserved "great weight" because of the State's "interest in protecting future innocent people who might get injured or killed by a drunk driver."

The assistant district attorney general gave "great weight" to her belief that Webb was not amenable to correction. Regarding this factor, the prosecutor noted her concern that pretrial diversion might constitute a "temporary fix" since Webb would only have to "abstain from criminal activity for at most a [two-]year period, after which the charges [would] be dismissed." In particular, the assistant district attorney general placed "great weight" on Webb's admission that she had a recurring alcohol abuse problem. She also gave "great weight" to the fact that Webb failed to stop or render aid to the injured victim and then committed the offense of initiating a false report of vandalism to the police. The prosecutor concluded that "prosecution of [Webb] on the indicted charges will [e]nsure a greater chance of [Webb's] permanent rehabilitation th[a]n if [p]retrial [d]iversion is granted, simply because of the lasting nature of a criminal record, if convicted."

The assistant district attorney general determined that pretrial diversion would not serve the ends of justice or the best interest of the public in light of the victim's extensive injuries. She placed "great weight" on the fact that Webb confessed to the crime only when presented with overwhelming evidence of her guilt. In addition, she placed "great weight"

-4-

on the fact that Webb's intoxication was so great that she believed she hit a mailbox rather than a person at the time of the incident.

Regarding Webb's attitude and behavior since the arrest, the prosecutor "weighed and considered" the fact that Webb confessed to the charged offenses and apologized to the victim. However, she noted that "it is relatively easy to confess when one has been caught." She added, "The State would have afforded much greater weight to [Webb's] attitude and behavior since the arrest if [she] had stopped at the scene of the crime and [had] rendered aid to the victim, instead of trying to cover it up."

The assistant district attorney general placed "some weight" on Webb's stable home environment since her remarriage. However, she noted that "home environments can change relatively quickly."

The prosecutor noted that Webb was not currently using drugs and had not consumed any alcohol since the incident in this case. Although she commended Webb on her sobriety, she stated her concern that Webb might "revert to her old ways[.]" Ultimately, she placed "little weight on this factor, based on [Webb's] prior social history of repeated cycle[s] of alcohol abuse and recovery."

The assistant district attorney placed "some weight" on Webb's emotional stability since returning to Alcoholics Anonymous and since her remarriage. However, she said this factor did not outweigh the other factors previously mentioned.

The prosecutor gave "substantial weight" to Webb's past employment history, asserting that she is "an able and productive member of society when she is sober." However, she stated that the weight she placed on this factor was not overcome by the weight given to the preceding factors.

The assistant district attorney general placed "some weight" on the fact that Webb has "a good reputation when she is sober." She reached this decision based on the letters written on Webb's behalf that were submitted.

The prosecutor gave "some weight" to Webb's marital stability. She noted that Webb had recently remarried and was in "a stable, loving relationship."

The assistant district attorney general attributed "marginal weight" to Webb's family responsibility, since both of Webb's children are adults. She noted that Webb's only responsibility, other than to her husband, was to her grandchildren, who did not live in her home.

Finally, the prosecutor placed "substantial weight" on law enforcement's strong opposition to Webb receiving pretrial diversion in this case, especially given law enforcement's "tireless work in keeping our streets and homes safe from those who would break the laws of the State of Tennessee." She noted that law enforcement was "very opposed to granting pretrial diversion in this case, mainly because of the continued, sustained intent on the part of [Webb] to hinder law enforcement's efforts to solve a crime." Finally, the prosecutor added that "it is law enforcement's opinion that anyone who would seriously injure an innocent person and leave the scene and then willingly and knowingly hinder law enforcement's efforts to solve that crime, especially a felony, should be prosecuted."

Finally, the assistant district attorney general explained her decision to deny pretrial diversion in Webb's case:

> After carefully considering and weighing all of the above factors, the State has concluded that the interests of justice and the interests of the public far outweigh the interests of [Webb]. [Webb] is a well-educated person who knew that her conduct was illegal. Not only did she make a conscious choice to violate the law by driving while under the influence of alcohol and hitting an innocent person, she made the choice to continue to break the laws of the State of Tennessee by attempting to cover up her crime. For the foregoing reasons, the State, having completely and fully considered [Webb's] application for [p]retrial [d]iversion, hereby denies her application pursuant to the laws of the State of Tennessee.

Upon receipt of this denial, Webb filed a second petition for writ of certiorari, which the trial court denied on the basis that the prosecutor had not abused her discretion in denying pretrial diversion. Webb then filed a motion for permission to appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, which was granted by the trial court. This court subsequently granted Webb's request for an interlocutory appeal pursuant to Rule 9.

**ANALYSIS**

Tennessee Code Annotated section 40-15-105(a)(1)(A) allows a district attorney general to suspend prosecution of a qualified defendant for a period of up to two years. A qualified defendant is one who has not been previously granted pretrial or judicial diversion, who has no prior misdemeanor conviction requiring the service of a sentence of confinement, and who has no prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction. T.C.A. § 40-15-105(a)(1)(B)(i)(a)-(b) (2006). In addition, the offense for which a defendant seeks pretrial diversion cannot be a Class A or Class B felony, certain Class C felonies, a sexual offense, driving under the influence, or vehicular assault. Id. § 40-15-105(a)(1)(B)(i)(c) (2006). In order to be granted

diversion, a defendant must agree to complete certain conditions for the duration of the diversion period. Id. § 40-15-105(a)(2) (2006). Upon completion of pretrial diversion, the charges against the defendant shall be dismissed with prejudice. Id. § 40-15-105(e) (2006).

Although statutorily eligible, a qualified defendant is not presumed to be entitled to pretrial diversion. State v. Yancey, 69 S.W.3d 553, 557 (Tenn. 2002) (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999)). The decision to grant or deny pretrial diversion lies within the discretion of the district attorney general. T.C.A. § 40-15-105(b)(3); State v. Pinkham, 955 S.W.2d 956, 959 (Tenn. 1997). A defendant has the burden of establishing his or her suitability for pretrial diversion. State v. Bell, 69 S .W.3d 171, 179 (Tenn. 2002).

The following relevant factors must be considered by the prosecutor when determining whether to grant or deny pretrial diversion: (1) the defendant's amenability to correction; (2) the defendant's propensity to re-offend; (3) the circumstances of the offense; (4) the defendant's criminal record; (5) the defendant's social history; (6) where appropriate, the defendant's physical and mental condition; and (7) whether pretrial diversion will serve the best interests of the public and the defendant. Pinkham, 955 S.W.2d at 959-60 (quoting State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983)). Additionally, the following factors and circumstances may also be considered to determine if pretrial diversion is warranted: the deterrent effect of punishment upon other criminal activity, the defendant's attitude and behavior since arrest, home environment, current drug use, emotional stability, employment history, general reputation, marital stability, and family responsibility as well as the attitude of law enforcement. State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (citations omitted).

The prosecutor "has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant." Bell, 69 S.W.3d at 178 (citing Pinkham, 955 S.W.2d at 959; Hammersley, 650 S.W.2d at 353). Moreover, a prosecutor should consider "[a]ny factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender[.]" Hammersley, 650 S.W.2d at 355. Factors related to the need for deterrence and the circumstances of the offense "cannot be given controlling weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" Washington, 866 S.W.2d at 951 (quoting State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988)). "If the district attorney general denies pretrial diversion, that denial must be written and must include both an enumeration of the evidence that was considered and a discussion of the factors considered and weight accorded each." Pinkham, 955 S.W.2d at 960 (citing State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993)). The prosecutor must fully articulate his or her evaluation of each factor:

If the application is denied, the factors upon which the denial is based must be clearly articulable and stated in the record in order that meaningful appellate review may be had. This requirement entails more than an abstract statement in the record that the district attorney general has considered these factors. He must articulate why he believes a defendant in a particular case does not meet the test.

State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989) (internal citation omitted), overruled in part on other grounds by Yancey, 69 S.W.3d at 559. Finally, the district attorney general must identify any disputed facts and must provide a reason for the denial of pretrial diversion. Winsett, 882 S.W.2d at 810.

If the application for pretrial diversion is denied, the defendant may seek a writ of certiorari in the trial court. T.C.A. § 40-15-105(b)(3). The prosecutor's decision to deny pretrial diversion is presumptively correct and is subject to review by a trial court for an abuse of discretion. Curry, 988 S.W.2d at 158. "[T]he trial court must only determine whether the district attorney general has abused his or her discretion by failing to consider and weigh all of the relevant factors or by reaching a decision that is not supported by substantial evidence." Bell, 69 S.W.3d at 179 (citing Curry, 988 S.W.2d at 158; Hammersley, 650 S.W.2d at 355).

The Tennessee Supreme Court has stated that "the district attorney general's failure to consider all of the relevant factors, including evidence favorable to the defendant, cannot be cured by the trial court's review." Id. "Because the trial court does not have appropriate findings made by the district attorney general upon which to review, allowing it to 'fill in the gaps' would extend de novo review over the district attorney general's decision and would allow the trial court to substitute its view over the pretrial diversion decision-making process." Id. Consequently, "[i]f the trial court determines that the district attorney general has failed to consider and weigh all relevant factors, the trial court must reverse the district attorney general's decision and remand the matter for further consideration and weighing of all of the factors relevant to the pretrial diversion determination." State v. McKim, 215 S.W.3d 781, 788 (Tenn. 2007) (citing Bell, 69 S.W.3d at 180). However, "[i]f the trial court determines that the district attorney general has considered all relevant factors, and no irrelevant ones, and has nonetheless committed an abuse of discretion in denying diversion, the trial court may order the prosecutor to place the defendant on pretrial diversion." Id. n.3 (citing T.C.A. § 40–15–105(b)(3) (Supp. 2004)).

Upon review of the writ of certiorari, the trial court must: (1) limit its consideration to the evidence which was before the prosecutor and the reasons given by the prosecutor in denying diversion; (2) conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant concerning the petition but not to hear additional evidence; (3)

adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor; and (4) state its findings in writing. State v. Oakes, 269 S.W.3d 574, 578 (Tenn. Crim. App. 2006) (internal citations omitted).

In the event that the trial court refuses to grant the defendant's writ of certiorari, the defendant may seek interlocutory review in this court. See Tenn. R. App. P. 9, 10; Tenn. R. Crim. P. 38. On review, this court is "bound by the factual findings made by the trial court unless the evidence preponderates against them." Bell, 69 S.W.3d at 177. "However, if the evidence of record is undisputed and calls for no finding of fact to resolve the issue, a trial court's determinations constitute conclusions of law to which an appellate court is not bound." State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993) (citations omitted). Accordingly, in a case where the facts are undisputed, this court must determine whether the prosecutor abused his or her discretion in denying the defendant's application for pretrial diversion. Id.

**I. Victim's Testimony at Hearing (Issue 1).** Webb argues that the trial court erred in allowing the victim to testify at the hearing on the State's denial of pretrial diversion. Although the State responds that Webb has waived this issue for failing to support it with argument or citation to authorities, we disagree. Webb specifically contends that allowing the victim to testify was improper because the trial court may only consider evidence that was before the prosecutor at the time he or she denied diversion and is limited to the reasoning provided by the prosecutor in denying diversion. See State v. Brown, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985). Moreover, she asserts that the trial court is limited to resolving factual disputes raised by the prosecutor and defendant and is precluded from hearing additional evidence at the hearing. See Curry, 988 S.W.2d at 157-58.

The record shows that there was some dispute between the parties as to whether Webb had a "sustained intent to violate the law." Ultimately, the trial court allowed the victim to testify, even though it did not believe that the victim was capable of testifying regarding Webb's intent. The victim subsequently provided the following limited testimony: (1) he was walking down Twentieth Street with his brother and his brother's girlfriend when he was hit by Webb's Jeep; (2) Webb did not stop her vehicle after the accident; and (3) he gave a description of Webb's vehicle to the officers when they arrived on the scene and that the officers later located Webb's car. We agree that the trial court may only hear evidence regarding factual disputes raised by the defendant or the prosecutor regarding the application for pretrial diversion at the hearing. See Oakes, 269 S.W.3d at 578. However, given the extremely limited nature of the victim's testimony, we conclude that Webb is not entitled to relief on this issue.

**II. Remand to the Prosecutor for Reconsideration (Issue 2).** Webb contends that the law in Tennessee is unclear regarding "whether . . . a trial court should grant diversion

for an eligible defendant who has been denied diversion by a prosecutor who has not considered all of the factors[] or whether . . . the matter should be remanded back to the prosecutor." Citing the cases of State v. Norman Jeffrey Pipkin, No. W1998-02738-CCA-RM-CD, 2000 WL 674587 (Tenn. Crim. App., at Jackson, May 24, 2000), State v. Robbie Carriger, No. E2000-00823-CCA-R3-CD, 2000 WL 1861823 (Tenn. Crim. App., at Knoxville, Dec. 20, 2000), and State v. Heather Richardson, No. M2010-01360-CCA-R3-CD, 2011 WL 303270 (Tenn. Crim. App., at Nashville, Jan. 25, 2011), perm. to appeal granted (Tenn. Aug. 24, 2011), Webb asserts that it is improper for a trial court to remand the matter to the prosecutor to "fill in the gaps" by reconsidering and weighing the relevant factors after the prosecutor has been found to have abused his or her discretion. She further asserts that the trial court in this case improperly allowed the assistant district attorney three chances to deny her application, despite the fact that she established her amenability to correction in her first application.

The State first responds that the trial court properly remanded the matter to the assistant district attorney general for reconsideration of all relevant factors, and we agree. See McKim, 215 S.W.3d at 788; Bell, 69 S.W.3d at 178. We also agree with the State's assertion that Webb's argument regarding the prosecutor "filling in the gaps" is misplaced. The State correctly notes that the "fill in the gaps" language comes directly from the Bell case, wherein the Tennessee Supreme Court concluded that the trial court was not allowed to consider factors not properly considered by the prosecutor in its response to the defendant's application for pretrial diversion. Bell, 69 S.W.3d at 179. The court then concluded that if the trial court were allowed to "fill in the gaps" by considering the missing factors, this "would extend de novo review over the district attorney general's decision and would allow the trial court to substitute its view over the pretrial diversion decision-making process." Id. Here, the trial court did not consider factors not properly considered by the prosecutor. Instead, the trial court properly remanded the matter to the prosecutor for reconsideration of the relevant factors. Accordingly, Webb is not entitled to relief on this issue.

However, the State acknowledges that "[t]o the extent the defendant argues that this Court is inconsistent on whether a trial court should order a defendant to be placed on diversion after finding that the prosecutor abused his or her discretion, the defendant is correct." The State cites several unpublished cases where this court has remanded the case to the trial court with instructions to the prosecutor to reconsider the defendant's application for pretrial diversion by addressing all relevant factors and providing weight for these factors. See State v. Shawn Macklin, No. W2009-01777-CCA-R9-CD, 2010 WL 2219588 (Tenn. Crim. App., at Jackson, May 27, 2010) (reversing the trial court's order finding that the prosecutor did not abuse his discretion and remanding the case with instructions to the prosecutor to reconsider the application for pretrial diversion based on only relevant factors); State v. Holly A. Hatcher, No. M2008-02042-CCA-R10-CO, 2010 WL 457491 (Tenn. Crim.

-10-

App., at Nashville, Feb. 10, 2010) (reversing the trial court's order and remanding the case to the prosecutor for reconsideration of all relevant factors, including evidence favorable to the defendant, and for the prosecutor to weigh each factor and to explain in writing how the prosecutor determined that a denial of pretrial diversion was proper); State v. Brian A. Snyder, No. E2008-01595-CCA-R9-CD, 2009 WL 2513874 (Tenn. Crim. App., at Knoxville, Aug. 18, 2009) (reversing the order of the trial court and remanding the case with instructions that the prosecutor reconsider the defendant's application for pretrial diversion in light of all relevant factors); State v. Susan Gail Stephens, No. M2008-00998-CCA-R9-CO, 2009 WL 1765774 (Tenn. Crim. App., at Nashville, June 23, 2009) (vacating the order of the trial court and remanding the case with instructions that the prosecutor reconsider the defendant's amenability to correction).

The State also cites three unpublished cases where this court remanded the case to the trial court with instructions for the court to order the prosecutor to grant the defendant pretrial diversion. See State v. Heather Richardson, No. M2010-01360-CCA-R3-CD, 2011 WL 303270 (Tenn. Crim. App., at Nashville, Jan. 25, 2011) (remanding case to the trial court with instructions to order the prosecutor to approve defendant's application for pretrial diversion after concluding that prosecutor failed to weigh factors and failed to state why unfavorable factors outweighed favorable factors), perm. to appeal granted (Tenn. Aug. 24, 2011); State v. Brian David Thomason, No. W2007-02910-CCA-R9-CD, 2009 WL 3015100 (Tenn. Crim. App., at Jackson, Sept. 22, 2009) (reversing and vacating trial court's judgment and remanding the matter to the trial court to grant pretrial diversion), perm. to appeal granted (Tenn. Aug. 24, 2011)[3]; and State v. Michael Eugene Chittum, No. M2008-02106-CCA-R9-CO, 2009 WL 1470464 (Tenn. Crim. App., at Nashville, May 27, 2009) (reversing the trial court's judgment and remanding the matter to the trial court for entry of an order granting the defendant pretrial diversion).

In an effort to resolve this conflicting split of authority, the State notes that it has filed Rule 11 applications to the Tennessee Supreme Court in Heather Richardson and Brian David Thomason and asserts that these applications are still pending before the court. Again citing Bell, 69 S.W.3d at 179 and McKim, 215 S.W.3d at 793, the State argues that its "position is that the Tennessee Supreme Court has clearly held that if a prosecutor fails to consider or weigh all of the relevant factors, the proper remedy is to remand to the trial court for the district attorney general to consider all of the relevant factors." In support of its position, it quotes the holding in Bell:

---

[3]This opinion reversed and remanded the denial of pretrial diversion and ordered the trial court to grant the applicant pretrial diversion only after re-consideration of all the relevant facts and circumstances.

[I]f a district attorney general has abused his or her discretion by denying pretrial diversion without considering and weighing substantial evidence favorable to a defendant, it follows that the decision must be reversed and the case remanded to the district attorney general for further consideration of all of the relevant factors in a manner consistent with this Court's decisions.

Bell, 69 S.W.3d at 179 (internal footnote omitted). Based on the decisions in Bell and McKim, we agree that the trial court properly remanded this matter to the prosecutor for reconsideration of all relevant factors in evaluating Webb's application for pretrial diversion.

**III. Waiver of Issues 3, and 7.** The State asserts that Webb has waived her issues regarding whether the trial court erred in suggesting that she file a second application for pretrial diversion and whether appellate review of the denial of her two applications for pretrial diversion was improper. Specifically, the State contends that Webb waived these issues because she failed to support them with argument or citation to authorities, and we agree. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Moreover, a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tenn. R. App. P. 27(a)(7). Accordingly, we conclude that these issues are waived. See State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987).

**IV. Prosecutor's Denial of Pretrial Diversion (Issues 4, 5, and 6).** Webb first argues that the State did not weigh all of the factors properly. In particular, she contends that the factors regarding the circumstances of the case and the need for deterrence were not of such overwhelming significance that they outweighed all of the other factors. In response, the State contends that "if a prosecutor considers and places a weight on all of the required factors, that decision may not be second-guessed by the trial court or the defendant." We agree that the prosecutor, after reconsidering Webb's application, did address and weigh each of the relevant factors in this case. In addition, the State notes that the prosecutor gave "considerable weight" to the circumstances of the offense, in particular the fact that Webb struck a fifteen-year-old victim walking down the street and injured him so severely that he incurred over $250,000 in medical expenses. The prosecutor also gave "great weight" to the deterrent effect of punishment since the State has an "interest in protecting future innocent people who might get injured or killed by a drunk driver." The State cites Curry for the proposition that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well." Curry, 988 S.W.2d at 158 (citing Washington, 866 S.W.2d at 951). Given that the prosecutor considered and weighed all relevant factors in this case, we agree with the State

that the denial of pretrial diversion based on the circumstances of the offense and the need for deterrence was proper.

Webb also argues that the prosecutor considered "irrelevant factors" and drew "conclusions based upon conjecture and speculation." She further argues that the prosecutor abused her discretion by denying pretrial diversion "based upon conclusionary, flawed logic such that the decision is arbitrary and capricious." Specifically, Webb contends that the prosecutor's conclusion that she would be more likely to be a repeat offender if she were granted pretrial diversion rather than if she were prosecuted on the indicted charges is an "abstract statement" not supported by empirical evidence. She claims that she "has not been arrested for any other crimes and has demonstrated over the years she can be amenable to correction, she can remain drug and alcohol free, and she can be a productive member of society." Webb also asserts that the prosecutor's findings that "pretrial diversion is a temporary fix to [her] deeper problem [of alcohol abuse][,]" that "home environments can change relatively quickly[,]" and that her emotional stability and stellar work history were overcome by the weight given to unfavorable factors constitute "abstract statements" made in an attempt to deny her application for pretrial diversion. Our review of the record shows that the assistant district attorney general did not consider any irrelevant factors. Instead, the record establishes that the prosecutor limited her consideration to only those factors relevant to pretrial diversion. We also conclude that the prosecutor did not engage in conjecture and speculation and did not use flawed logic in reaching her decision to deny Webb's application for pretrial diversion. Although Webb may not agree with the assistant district attorney general's decision, we conclude that the prosecutor, after reconsidering Webb's application, did not abuse her discretion since she properly considered all relevant factors, weighed each factor, and explained why the factors against pretrial diversion outweighed the factors for pretrial diversion. Moreover, we conclude that the assistant district attorney general did not make abstract statements regarding each of the factors, since she fully articulated her consideration of each factor. See Herron, 767 S.W.2d at 156, overruled in part on other grounds by Yancey, 69 S.W.3d at 559. Accordingly, Webb is not entitled to relief.

## CONCLUSION

Upon review, we conclude that the trial court properly affirmed the prosecutor's denial of pretrial diversion. Accordingly, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE